IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | 8:10CR201 |
| vs. | |
| KATHLEEN FISCHER, | ORDER FOR COMPASSIONATE RELEASE |
| Defendant. | |

This matter is before the Court on the defendant's motions for compassionate release for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Filing Nos. 130 and 134. The Court stayed this motion pending proof of exhaustion. Filing No. 131. The Court additionally appointed the Public Defender's office to represent defendant. *Id.* The Court requested that the United States Probation Office review the plan of home detention and draft an investigation report. Filing No. 137. Defendant requests this Court allow her to serve the remainder of her sentence on home confinement. The probation office has filed the investigation report indicating that the suggested home confinement is acceptable, if the Court chooses to grant the motion for compassionate release. Filing No. 141.

The Court sentenced Ms. Fischer on May 23, 2011, to a term of 180 months custody for Conspiracy to Distribute of Methamphetamine, 21 U.S.C. 841(b)(1) and 846. She was also sentenced to a five-year term of supervised release. The defendant had a

1

criminal history category of III, but because of this conviction, she became a habitual offender and became a Category VI.  Her criminal history prior to the instant offense includes felonies for Possession with Intent to Distribute Controlled Substance and Conspiracy to Distribute Cocaine.  She is projected to release from the Bureau of Prisons on April 7, 2023.  Ms. Fischer is incarcerated at FMC Carswell where COVID-19, according to Ms. Fischer, has infected over 130 inmates when this motion was filed.

**DISCUSSION**

The First Step Act amended numerous provisions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration. Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019).  Congress designed the provision at issue here, 18 U.S.C. § 3582(c)(1)(A), for "Increasing the Use and Transparency of Compassionate Release." § 603(b), 132 Stat. at 5239. Section 3582(c)(1)(A) allows defendants, for the first time, to petition district courts directly for compassionate release. *Id.*  Compassionate release provides a path for defendants with "extraordinary and compelling reasons" to leave prison early.  § 3582(c)(1)(A)(i).  Such a sentence reduction must comply with the 18 U.S.C. § 3553(a) factors and "applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

Pursuant to § 3582(c)(1)(A), a defendant may (after exhausting his or her administrative remedies) move for reduction of his or her term of imprisonment based upon "extraordinary and compelling reasons."  The Court, after considering the factors enumerated in 18 U.S.C. § 3553(a)[1], may grant the motion if extraordinary and

---

[1] The statute states: (1) in any case--
(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's

compelling reasons warrant the reduction, and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[2] Accordingly, an initial review of the defendant's claim will involve these inquiries:

1. Has the defendant exhausted administrative remedies?

2. Has the defendant identified extraordinary and compelling reasons for reducing his or her term of imprisonment?

3. Would application of the § 3553(a) factors permit reducing the defendant's sentence if those extraordinary and compelling reasons were substantiated?

4. Ensure that any reduction is consistent with applicable policy statements.

18 U.S.C. § 3582(c)(1)(A).

Already "tinderboxes for infectious disease," prisons now are even more dangerous than we typically accept. *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020). The Attorney General has directed the BOP to consider increased use of home confinement for at-risk inmates. Memorandum from U.S. Att'y Gen. William Barr to Dir. of Bureau of Prisons (Mar. 26, 2020).

---

facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
(i) extraordinary and compelling reasons warrant such a reduction; . . .
***** and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.
18 U.S.C. § 3582(c)(1)(A).

### A. Exhaustion

The Court finds that the defendant has met the exhaustion requirement. *See United States v. Brown*, 2020 WL 2091802, at *5 (S.D. Ia. Apr. 29, 2020) ("Defendant satisfied the exhaustion requirement's text and purpose [when] [h]e gave the BOP the first chance to review his circumstances and let thirty days pass before proceeding to court."). Defendant filed such a motion with the BOP and 30 days have elapsed. Defendant filed her request for home confinement on April 7, 2020, and it was denied on May 31, 2020. She filed another request on June 17, and the BOP has not yet replied to that request. Accordingly, the Court finds she has exhausted her administrative remedies.

### B. Medical Vulnerability

Next, the Court finds that defendant's physical and medical vulnerability to COVID-19 are extraordinary and compelling reason for a change in defendant's sentence.[2] *See* e.g., U.S.S.G. § 1B1.13 comment. n.1(A)-(C). As Judge Gerrard recently observed in Jenkins, there is currently "no 'applicable' policy statement cabining the Court's discretion to act under § 3582(c)(1)(A)." *United States v. Jenkins,* 2020 WL 2814437, at *3 (D. Neb. May 26, 2020); *see also United States v. Redd,* 2020 WL 1248493, at *5 ( E.D. Va. March 16, 2020) ("there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'"); *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019) (canvassing cases and holding that courts, rather than the outdated policy statements, should determine whether a defendant qualifies for compassionate release); *United*

---

[2] *See* defendant's medical records at Filing Nos. 50, 52 and 53.

*States v. Beck*, 425 F. Supp.2d 573, 579 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

COVID-19 is clearly a global pandemic that presents extraordinary and compelling release for certain prisoners. It is unprecedented. COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. These include a compromised immune system, obesity, heart disease, hypertension, chronic lung disease, diabetes mellitus, and asthma. Groups at Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention (April 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Defendant is 55 years old. She is currently wheelchair bound, due to the need for a hip replacement. The Court finds that being in a wheelchair in the case of this defendant operates to place her at higher risk for infection. *See United States v. Asher*, 2020 WL 3424951 *3 (N.D. Ga. June 15, 2020). ("[i]n addition, being confined to a wheelchair during waking hours makes Asher more vulnerable to infection because he sits lower and is thus more vulnerable to infected saliva droplets, and the wheels of the wheelchair are constantly coming into contact with surfaces that might contain the virus.") Ms. Fischer has been approved for a total left hip replacement and has been prescribed Meloxicam 15MG tablets for the pain she experiences. However, she cannot receive a hip replacement through the BOP due to the COVID-19 pandemic. She also has preexisting conditions including bradycardia and degenerative osteoporosis.

It appears that Ms. Fischer has a significant history of mental health issues. She suffers from depression, anxiety, and sleep problems for which she takes prescribed medication. Her history includes attempted suicide on several occasions, and she has been diagnosed with multiple personality disorder and schizophrenia. She also has recurrent cocaine/methamphetamine dependence. However, since Ms. Fischer was diagnosed with amphetamine and cocaine dependence, she has been in full remission. Ms. Fischer stated she began taking prescribed psychotropic medication again in 2010. She took Celexa for depression, Risperdal for anxiety, and Trazadone for sleep problems. However, the BOP inmate records classify her as "care level 1 mental health" which indicates she shows no significant functional impairment with her mental illness and needs no regular mental health interventions.

### C.  Section 3553(a) Factors

Finally, the Court must consider if compassionate release comports with any Applicable § 3553(a) factors. *See also* § 3582(c)(1)(A). When reviewing the § 3553(a) relevant factors, the balance of those factors supports a sentence of home confinement. The Court has already established that Ms. Fischer's health conditions and physical limitations place her at heightened risk for severe illness from COVID-19. Second, the Court finds that the unreasonable exposure to the COVID-19 deadly contagion is not just. Defendant has been charged with a drug crime. Further, she has served approximately 75% of her sentence. The criminal history as set forth in the PSR, Filing No. 97, shows a lack of violence. *Id.* at ¶ 34. There is no indication of significant weapons charges or such violations on her record. There is no evidence that defendant poses a threat to the

6

public.[3]  Ms. Fischer completed several adult continuing education courses including, but not limited to: Setting Life Long Goals, Essentials of Parenting, Business Management, Dave Ramsey Financial Class, Resume Class, Founder of AA, Parenting from a Distance, Keyboarding, Women's Health, Weight Management, and Conflict Divided our Country. She does not have a disciplinary record in the BOP.  The Court believes that prison incarceration is unnecessary "to protect the public from further crimes of the defendant." § 3553(a)(2)(C).  Based on these findings, the Court finds that the § 3553(a) factors militate to granting defendant's compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

Defendant has a release plan to live with her relatives, her brother and sister-in-law.  The probation office indicated that "[i]t does appear that Ms. Fischer has a solid release plan established to reside with her brother and sister in-law, Donald and Anne Johnston.  In speaking with Donald and Anne Johnston, both are supportive of Ms. Fischer's compassionate release request." Filing No. 141 at 4.

**THEREFORE, IT IS ORDERED THAT:**

1. For the reasons stated herein, defendant's motions for compassionate release, Filing Nos. 30 and 134, are GRANTED.  The defendant is to be released from Bureau of Prisons Custody on or before October 15, 2020.

2. IT IS HEREBY ORDERED THAT the defendant's prison sentence is reduced to time served, and she will serve her five-year term of supervised release

---

[3] The government argues that defendant might present a danger to the community.  Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger for release or detention of a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1) – (4).

pursuant to the conditions previously imposed by the Court and as set forth in the probation investigation report.

3. Defendant shall report to the United States Probation and Pretrial Services Office, for the District of Nebraska, immediately upon her release. She also shall remain in self-quarantine for fourteen days upon returning home. She shall comply with national, state, and local orders regarding COVID-19.

Dated this 24th day of September, 2020.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge